```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


KEVIN D. DARRAH,

       Plaintiff,

   vs.                            Civil Action 2:12-cv-899
                                  Judge Smith
                                  Magistrate Judge King

DR. KRISHER, et al.,

       Defendants.
```

## OPINION AND ORDER

Plaintiff, a former inmate at Lebanon Correctional Institution ("LeCI") and current inmate at the Madison Correctional Institution ("MaCI"), brings this civil rights action under 42 U.S.C. § 1983 claiming a denial of his right under the Eighth Amendment to the United States Constitution for denial of medical care.  Only the claims against defendant Karen Stanforth remain.  *Order*, ECF 64.  This matter is before the Court on *Defendant Karen Stanforth's Motion for Summary Judgment*, ECF 66 ("*Motion for Summary Judgment*").  For the reasons that follow, the *Motion for Summary Judgment* is **GRANTED**.

I.   BACKGROUND

This Court has previously set forth in detail the material facts in this case.  *See Report and Recommendation*, ECF 53, pp. 1-11.  More briefly, the Ohio Department of Rehabilitation and Correction ("ODRC") maintains "a Drug Formulary, specifically developed for the ODRC and its institutions, that lists standardized medications that may be

1

prescribed and dispensed for inmates without prior authorization from . . . the ODRC Office of Correctional Health Care ["Drug Formulary"]." *Id*. at 1 (internal quotation marks and citations omitted).[1] "Medications not listed on the Drug Formulary [non-formulary drugs] require authorization prior to prescribing or administering to inmates." *Id*. at 2. To obtain prior authorization, an advanced level provider must submit a "Request for Non-Formulary Drug Prior Authorization" ("PA request") to the ODRC Office of Correctional Health Care. *Id*. Formulary medications "should be prescribed before prescribing non-formulary medications." *Id*.

Plaintiff entered the Correctional Reception Center ("CRC") on September 25, 2006. *Id*. Prior to his incarceration, plaintiff was diagnosed with plantar hyperkeratosis ("HPK") at the Cleveland Clinic. *Id*. HPK, a form of psoriasis, is a congenital disease that causes skin to thicken and build up on plaintiff's feet, creating thick calluses that crack open and form fissures. *Id*. The Cleveland Clinic prescribed Soriatane, a second generation retinoid used to treat severe psoriasis conditions. *Id*. at 3.

On November 29, 2006, plaintiff was transferred from CRC to MaCI and, on December 22, 2006, to LeCI. *Id*. Plaintiff met with defendant Karen Stanforth, MaCI Health Care Administrator, in December 2006 to discuss his treatment plan for care of his HPK. ECF 44-12, p. 2; 44-30, p. 1. She advised him that they were working on getting him an appointment as soon as possible with the dermatology clinic. ECF 44-

---

[1] For purposes of brevity, the Court will omit cited sources contained in the *Report and Recommendation*.

12, p. 2.  Thereafter, CMC dermatologists examined plaintiff in December 2006 and noted that his HPK had been "successfully treated" with Soriatane and that "[m]ultiple other treatments [were] ineffective."  *Report and Recommendation*, ECF 53, p 3.  The CMC dermatologists at LeCI prescribed Soriatane, a non-formulary medication.  *Id*.  In September 2007, plaintiff reported "good results" with this drug and the medical records reflect that plaintiff's HPK was "much improved on Soriatane" in December 2007.  *Id*. at 4.  Plaintiff continued to be successfully treated with Soriatane while he was incarcerated at LeCI.  *Id*.

On January 18, 2011, plaintiff was transferred from LeCI back to MaCI.  *Id*.  On January 31, 2011, he was seen in Nursing Sick Call ("NSC") and reported that he had not received Soriatane since his transfer to MaCI.  *Id*.  On the same day, nursing personnel contacted Dr. David C. Weil[2] about ordering Soriatane.  *Id*.  On February 17, 2011, plaintiff was again seen in NSC and inquired about reordering Soriatane, but he did not complain of pain during this visit.  *Id*.

Dr. Weil examined plaintiff on March 2, 2011, noting that plaintiff's heels were fissuring, but that plaintiff was in no apparent distress.  *Id*.  Dr. Weil also noted that plaintiff had previously used Soriatane, with "good effect[,]" and that other creams had had no effect, requiring plaintiff to walk on his toes.  *Id*. at 5.  Dr. Weil went on to note that plaintiff was under the impression that his prior authorization for Soriatane was still in effect.  *Id*.  Dr.

---

[2] The Court previously dismissed Dr. Weil as a defendant.  *See Order*, ECF 64.

3

Weil ordered plaintiff's previous medical charts, a copy of the most recent prior authorization for Soriatane, and Soriatane for plaintiff. *Id*.

Plaintiff filed an informal complaint on March 19, 2011, complaining that, because he was not taking Soriatane, he was in excruciating pain and that open wounds put him at risk for a staph infection. *Id*. On about March 22, 2011, plaintiff sent a "kite" (a note) to MaCI's medical department, again complaining that, because he was not taking Soriatane, he had one large fissure on each heal that caused excruciating pain that placed him at risk for a staph infection. *Id*. On the same day, plaintiff also filed a skin complaint form, complaining that he was not receiving proper treatment for his feet. *Id*. at 5-6. Defendant Stanforth responded by arranging for plaintiff to meet with Dr. Weil on March 22, 2011. *Id*. at 6. On that day, Dr. Weil again placed an order for Soriatane. *Id*.

After examination on March 28, 2011, Dr. Weil noted "large plaques/fissures" on plaintiff's heels and placed plaintiff on medical lay-in for 20 days because of plaintiff's pain and difficulty walking. *Id*. On the same day, Dr. Weil again attempted to reorder Soriatane. *Id*.

On April 4, 2011, defendant Stanforth examined plaintiff and noted "several calluses with some deep cracks/fissures at heel areas. No signs of infection identified." *Id*. Defendant Stanforth discussed arranging a possible telephone conference with plaintiff's wife to see if he has private insurance and if that plan would provide Soriatane,

4

which is not on the Drug Formulary. *Id*. On April 4, 2011, Dr. Weil submitted a prior authorization requesting Soriatane for plaintiff. *Report and Recommendation*, ECF 53, pp. 6-7. On April 6, 2011, Dr. Krisher[3] denied the PA request for Soriatane, explaining that an alternative formulary medication, Methotrexate, was available. *Id*. at 7.

During a telephone conference on April 7, 2011, defendant Stanforth advised plaintiff and plaintiff's wife, Lacona Darrah, that defendant Krisher had denied the request for Soriatane. *Id*. at 7. Upon defendant Stanforth's recommendation, plaintiff agreed to try Methotrexate. *Id*. Dr. Weil was advised of this decision and prescribed this medication following "priority lab draws" to assess plaintiff. *Id*. On April 11, 2011, plaintiff picked up the Methotrexate and folic acid for self-administration. *Id*.

Although plaintiff reported to the infirmary at least ten times after beginning Methotrexate, the progress notes do not refer to plaintiff's HPK again until June 14, 2011. *Id*. at 8. On that date, Dr. Weil examined plaintiff who reported that his feet were "no worse but no better[.]" *Id*. Upon plaintiff's request, Dr. Weil increased plaintiff's Methotrexate dosage. *Id*.

On July 7, 2011, plaintiff filed an informal complaint, complaining that, because he was not taking Soriatane, he was in severe pain and prone to infection. *Id*. at 8. In response to this complaint, defendant Stanforth discussed plaintiff's HPK with Dr. Weil

---

[3] The Court previously dismissed Dr. Krisher as a defendant. *See Order*, ECF 64.

5

"who [had] concerns that [plaintiff claimed] 'severe' pain yet . . . told [Dr. Weil that plaintiff] want[ed] to 'run on the track.'" *Id.* Defendant Stanforth advised plaintiff that "[t]his is conflicting information and difficult to understand.  We offered a wheelchair for long distance walking but, again, you declined this and instead want to 'run' on your painful feet. (?)" *Id.*  Defendant Stanforth further advised plaintiff to sign up for sick call so Dr. Weil could determine if a stronger dose of Methotrexate was needed.  *Id.*

On July 28, 2011, plaintiff filed a grievance, explaining that he has pain in his feet whether he is sitting, walking, or running and complaining that the Methotrexate was "not working" and asking that Soriatane be immediately prescribed.  *Id.* at 8-9.[4]  On that same day, plaintiff was seen for a podiatry consultation.  *Id.*  The podiatry note reflects "multiple areas of severe HPK buildup" with "pain to palpitation."  *Id.* at 9.  Plaintiff's HPK lesions were debrided. Nevertheless, it was noted that plaintiff's "palmo-plantar keratoderma" was "stable in nature."  *Id.*

Thereafter, plaintiff continued to be seen for follow-up visits throughout August, September, and into November 2011.  *Id.* at 9-10. Dr. Weil examined plaintiff on November 1, 2011, and noted plaintiff's complaint that the Methotrexate provided no benefit and that his heel fissures were not closing.  *Id.* at 10.  Dr. Weil noted fissures on both heels and prescribed a pain medication.  *Id.*

---

[4] On appeal, the Chief Inspector concluded on October 13, 2011 that "the medical staff is giving you proper care within the ODRC guidelines."  *Id.* at 9 n.7.

6

Plaintiff had a follow-up visit in DSC on November 15, 2011, complaining that the Methotrexate had had no effect on his HPK. *Id*. The record reflects that an "attempt to restart Soriatane" would be made through plaintiff's private insurance "or Canada." *Id*. On November 17, 2011 plaintiff was advised that a prescription for Soriatane would be placed at plaintiff's chosen pharmacy and that plaintiff would "either enroll privately [through his wife] . . . or secure Canadian supply[.]" *Id.*

On November 21, 2011, a prescription for Soriatane was placed at a non-ODRC pharmacy. *Id*. Thereafter, Dr. Eddy approved Dr. Weil's PA request to permit plaintiff to receive the Soriatane that Ms. Darrah had purchased, permitting a 90-day prescription. *Id*. at 10-11. Plaintiff received the Soriatane sometime in February 2012. *Id*. at 11. During a podiatry examination on March 12, 2012, plaintiff reported that his feet had improved after using Soriatane for a month. *Id*. A request for a new order for Soriatane on March 21, 2012 was granted. *Id*.

A chronic disease follow-up examination on April 23, 2012 revealed that plaintiff's foot lesions were almost gone. *Id*. Subsequent evaluations revealed continued improvement. *Id*. Dr. Weil submitted additional PA requests for Soriatane (at Ms. Darrah's expense), which were approved by Dr. Eddy. *Id*.

Plaintiff filed this action on September 28, 2012, asserting various claims against several MaCI and ODRC employees. *Complaint*,

7

ECF 3.[5]  After the filing of this action, ODRC began to pay for plaintiff's Soriatane.  ECF 44-7, PAGEID#:422.

On March 30, 2015, this Court dismissed the claims against Drs. Eddy, Weil, and Krisher, leaving pending only the claims against defendant Stanforth who has now moved for summary judgment on those claims.  *Order*, ECF 64; *Motion for Summary Judgment*.  Plaintiff has opposed the motion.  *Plaintiff's Response in Opposition to Defendant Karen Stanforth's Motion for Summary Judgment*, ECF 68 ("*Opposition*").  With the filing of *Defendant Karen Stanforth's reply in Support of Her Motion for Summary Judgment (Doc. 66)*, ECF 71 ("*Reply*"), this matter is now ripe for resolution.

**II.  STANDARD**

The standard for summary judgment is well established.  This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  In making this determination, the evidence must be viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a

---

[5] Plaintiff and another inmate originally joined in the single *Complaint*.  The Court concluded that the claims of these two inmates had been improperly joined and directed the Clerk to create two separate case files addressing the claims separately.  *Initial Screening Report and Recommendation*, Doc. No. 4.

verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson,* 477 U.S. at 251.

The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Catrett,* 477 U.S. at 323. Once the moving party has met its initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250 (quoting former Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir. 1995)("nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial"). "Once the burden of production has so shifted, the party opposing summary judgment cannot rest on the pleadings or merely reassert the previous allegations. It is not sufficient to 'simply show that there is some metaphysical doubt as to the material facts.'" *Glover v. Speedway Super Am. LLC,* 284 F. Supp.2d 858, 862 (S.D. Ohio 2003)(citing

9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Instead, the non-moving party must support the assertion that a fact is genuinely disputed.  Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Glover,* 284 F. Supp.2d at 862 (citing *InteRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989)).  Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties."  *Id.*  See also Fed. R. Civ. P. 56(c)(3).

**III. DISCUSSION**

Plaintiff brings this action against defendant Stanforth in her official and individual capacities pursuant to 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction  [*10] thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  A *prima facie* case under § 1983 requires evidence of (1) conduct by an individual acting under color of state law, and

(2) the deprivation of a right secured by the Constitution or laws of the United States. *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1202 (6th Cir. 1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Section 1983 merely provides a vehicle for enforcing individual rights found elsewhere and does not itself establish any substantive rights. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).

    A.    **Official Capacity Claims**

In the case presently before the Court, plaintiff alleges that defendant Stanforth acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution and is liable in her official capacity. *See*, *e.g.*, *Complaint*, ¶¶ 20, 196, 199. Official capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)).

Plaintiff alleges that Defendant Stanforth is an agent of the State of Ohio. *Complaint*, ¶ 20. However, the State of Ohio is immune from suit in this Court by virtue of the Eleventh Amendment to the United States Constitution. *See*, *e.g.*, *Beil v. Lake Erie Corr. Records Dep't*, No. 06-3155, 282 F. App'x 363, at *366 (6th Cir. June 13, 2008). *See also Regents of Univ. of Cal. v. Doe*, 519 U.S. 425,

429 (1997) (stating that Eleventh Amendment sovereign immunity applies not only to the states themselves but also to "state agents and state instrumentalities"). The Eleventh Amendment does not, however, preclude official capacity claims for prospective injunctive relief. *Ex parte Young*, 209 U.S. 123 (1908).

Plaintiff seeks monetary damages and a judgment declaring that defendant Stanforth's failure to provide medical care violated plaintiff's Eighth Amendment rights. *Complaint*, p. 42. Plaintiff's requested declaration would be retroactive in nature. *See*, *e.g.*, *Dye v. Hatfield*, No. 1:12-cv-1204, 2013 U.S. Dist. LEXIS 159010, at *3 (W.D. Mich. Oct. 10, 2013), *adopted by, objection overruled by, dismissed in part by Dye v. Hatfield*, No. 1:12-cv-1204, 2013 U.S. Dist. LEXIS 158094 (W.D. Mich. Nov. 5, 2013); *Sandy Frank Prods. LLC v. Mich. Film Office*, No. 11-10933, 2012 U.S. Dist. LEXIS 399, at *10-11 (E.D. Mich. Jan 4, 2012). Because plaintiff seeks only retroactive relief and monetary damages, defendant Stanforth is entitled to Eleventh Amendment immunity on plaintiff's official capacity claims.

**B.  Individual Capacity Claims**

Plaintiff alleges that defendant Stanforth violated his Eighth Amendment rights because his request for Soriatane was "met with resistance from Defendant Stanforth . . . due to the cost of the medication" and "[o]nce cost was no longer an issue, Defendant Stanforth . . . approved the medication[.]" *Complaint*, ¶¶ 196, 199. *See also Initial Screening Report and Recommendation*, ECF 4, p. 9 (noting that the allegations against defendant Stanforth appeared in

12

paragraphs 196 and 199 of the *Complaint*).  To prevail on this claim, plaintiff must establish that defendant Stanforth acted with "deliberate indifference to [his] serious medical needs."  *See Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976).  Deliberate indifference in violation of the Eighth Amendment contains both an objective and subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 835-57 (1994).  As for the objective component, a plaintiff must establish a "sufficiently serious" medical need.  *Farmer*, 511 U.S. at 834.  A medical need is "sufficiently serious" when it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention[.]'"  *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).  However, when a plaintiff bases a claim on "'the prison's failure to treat a condition adequately,'" *id*. (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004)), "the plaintiff must 'place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment[.]'"  *Id*. (quoting *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001)).

In the case presently before the Court, defendant Stanforth does not appear to dispute that plaintiff's diagnosis of HPK is sufficiently serious.  *See generally Motion for Summary Judgment*.  Indeed, plaintiff entered MaCI with a diagnosis of HPK and a prescription for Soriatane.  *Report and Recommendation*, p. 22.  Moreover, the medical records previously submitted by plaintiff

13

provide evidence of plaintiff's diagnosis, condition, and the existence of severe fissures while incarcerated at MaCI. *Id*. (citing medical records and affidavit and report of plaintiff's medical expert). Plaintiff has established the objective prong of his claims. *See Santiago*, 734 F.3d at 590.

Turning to the subjective component, plaintiff must establish that defendant Stanforth had a "'sufficiently culpable state of mind,' equivalent to criminal recklessness." *See Santiago*, 734 F.3d at 591 (quoting *Farmer*, 511 U.S. at 834, 839-40). This component requires more than "mere negligence, but less than 'acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005) (quoting *Farmer*, 511 U.S. at 835). More specifically, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that [s]he did in fact draw the inference, and that [s]he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). *See also Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.").

Finally, although a difference of opinion between a prisoner and prison health care providers, or a dispute over the adequacy of a prisoner's treatment, may constitute medical malpractice, that difference or dispute is not sufficient to state a claim for deliberate indifference under the Eighth Amendment. *Estelle*, 429 U.S.

14

at 106; *Apanovitch v. Wilkinson*, No. 01-3558, 32 F. App'x 704, 707 (6th Cir. Feb. 5, 2002) (granting summary judgment to defendants where medical records showed that prison provided plaintiff with orthopedic devices, prescribed pain killers, and ordered diagnostic tests).

In the case presently before the Court, plaintiff first contends that defendant Stanforth, as MaCI's Health Care Administrator, "played a critical role in the deprivation of" plaintiff's Eighth Amendment rights because she was, *inter alia*, "responsible for decisions about the deployment of health resources" and "providing clinical and administrative supervision to institution medical staff 24 hours a day, 7 days per week." *Opposition*, p. 7 (citing ECF 44-27 (ODRC Policy Number 68-MED-01, addressing medical services)) (internal quotation marks omitted). Plaintiff contends that despite this responsibility and her knowledge of plaintiff's serious medical need, defendant Stanforth failed to provide adequate medical care to plaintiff. *Id*. Plaintiff's arguments are not well-taken.

Defendant Stanforth is a registered nurse with masters' degrees in nursing and education. *See* ECF 44-30, PAGEID#: 526, 529. It is undisputed, however, that she is not an Advanced Level Provider ("ALP") who has the authority or licensure to prescribe medications for inmates. *See*, *e.g.*, *id.*; ECF 44-26, ODRC Policy 52-RCP-06, *Reception Intake Medical Screening*, PAGEID#:475(IV), 477 (defining ALP and explaining that "[t]he nurse completing the initial intake will obtain an order from an Advanced Level Provider for any medication needed"); *Lawson v. McQuate*, No. 2:12-cv-533, 2014 U.S. Dist. LEXIS

15

19919, at *7 (S.D. Ohio Feb. 18, 2014) (recognizing that the defendant, a registered nurse, did not have authority to prescribe medication to the plaintiff inmate), *adopted and affirmed by Lawson v. McQuate*, No. 2:12-cv-533, 2014 U.S. Dist. LEXIS 63733 (S.D. Ohio May 8, 2014).  The Court therefore cannot find that defendant Stanforth, who lacked authority and licensure to issue prescriptions, was deliberately indifferent for failing to prescribe Soriatane to plaintiff.

Moreover, even if defendant Stanforth could prescribe medication to plaintiff, this Court has already determined that the physician defendants were not deliberately indifferent to plaintiff for failing to initially prescribe Soriatane or for considering the cost of this non-formulary medication.  *See Report and Recommendation*, pp. 27-30, *adopted and affirmed by Order*, ECF 64.  In opposing the *Motion for Summary Judgment*, plaintiff does not offer any new reasons for revisiting this decision and does not even address the *Complaint*'s cost allegation, apparently abandoning this claim.  *See generally Opposition*.  Accordingly, defendant Stanforth was not deliberately indifferent even if she considered the cost of Soriatane.

Plaintiff nevertheless goes on to argue for the first time that "Defendant Stanforth can be held liable for her abdication of her duties to ensure that inmates receive appropriate medical care." *Opposition*, p. 7.  As an initial matter, a plaintiff may not raise a new claim at the summary judgment stage because, *inter alia*, it results in unfair surprise to the opposing party.  *See*, *e.g.*,

*Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2008); *Tucker v. Union of Needletrades, Indus., & Textile Emples.*, 407 F.3d 784, 788-89 (6th Cir. 2005).  Accordingly, the Court need not consider plaintiff's new argument based on an alleged abdication of duties.

Even if the Court considered the merits of plaintiff's new argument, it is nevertheless unavailing.  Plaintiff specifically argues that defendant Stanforth abdicated her duties by failing to follow ODRC policy, which disrupted plaintiff's treatment plan, exacerbating his HPK.  *Opposition*, pp. 7-9.  However, an alleged failure to comply with an administrative policy does not, by itself, establish a constitutional violation.  *See*, *e.g.*, *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007) ("[A] finding that such [state and county school board] policies were violated would not support a claim under § 1983."); *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992) (explaining that an alleged violation of a city policy does not necessarily result in a constitutional violation because, *inter alia*, "the issue is whether [the defendant] violated the Constitution"); *Barber v. Salem*, 953 F.2d 232, 240 (6th Cir. 1992) ("[A] failure to comply with a state regulation is not itself a constitutional violation.").  *See also State ex rel. Larkins v. Wilkinson*, 79 Ohio St. 3d 477, 479 (1997) ("[Prison regulations] are primarily designed to guide correctional officials in prison administration rather than to confer rights on inmates.") (citing *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995)).

17

In addition, this Court has already explained that the defendant doctors were not deliberately indifferent to plaintiff's HPK because of an alleged disruption in treatment. *See Report and Recommendation*, pp. 28-30, *adopted and affirmed by Order*, ECF 64. Nothing in the *Opposition* persuades this Court that it reached this conclusion in error as it relates to defendant Stanforth, *i.e.*, that she was aware of and yet disregarded plaintiff's serious medical needs. For all of these reasons, plaintiff has failed to establish the subjective element of his Eighth Amendment deliberate indifference claim.

**WHEREUPON**, *Defendant Karen Stanforth's Motion for Summary Judgment*, ECF 66, is **GRANTED**. The Clerk shall enter **FINAL JUDGMENT** dismissing this action.

　　　　　　　　　　　　　　　　　　　_s/George C. Smith_____
　　　　　　　　　　　　　　　　　　　**George C. Smith, Judge**
　　　　　　　　　　　　　　　　　　**United States District Court**